We will hear argument next in No. 17-1648 in Re TecSec. Mr. Oakes, I should say, we will expect to stick to the clock pretty closely at this point. I see that we are not the star attraction here today, so I will do that. Please. Good morning. May it please the Court. Michael Oakes for the Appellant and Patent Owner, TecSec, Inc. This is an appeal from a decision from the Patent Trial and Appeal Board, following a request by TecSec for a supplemental examination affirming the examiner's decision finding the claims of the 433 patent as obvious in view of two combinations. The grounds for rejection should be reversed because they are premised on one of the combinations of flawed claim construction. They ignore important pieces of evidence in the record. They use improper hindsight and they fail to provide substantial evidence of a proper motivation to combine. Can I ask you that? The incorrect claim construction is the claim construction of encrypting or encryption, is that right? That's correct. And the government's basic response to that, I think, is the only potentially, even the only alleged consequence of that is the inclusion of hashing or not. And the government doesn't even defend the board's reliance on hashing and says it's independently supported on, what is it, POND? That's correct. POND has the actual encryption that's reversible by decryption. What's wrong with that argument? The problem with that is that's not what the examiner found and that's not what the board found. So both the examiner and the board relied on wave research to teach the encrypting. And it's very clear from both the examiner and the board's decision. So the examiner, and I'll point to appendix 22 and 23, the quote here is, the examiner, and this is the board's language now in affirming the examiner, the examiner continues to rely on wave research to teach encrypting and storing an object for subsequent use, but determines the encryption as specifically and recited as taught by the collective teachings. So they have not given up that wave research teaches the encrypting step. What they found was that the specific tag-based encryption that they claim was disclosed in POND is what's supplementing the encryption already taught in WAVE. So they've not seated this and proposed these as two separate grounds. They said, we're still relying on WAVE for teaching encrypting, but nobody here is supporting the examiner's construction of encrypting anymore. The patent office won't defend that, and it's not defensible. Hashing is not encryption. It's not how it's used in the patent. It's not how the specification claims that to have an encrypted object, you must be able to decrypt it for subsequent use. The expert declarations that were submitted confirms encrypting is a known two-way process. So what about the middle of A24, the board's decision, where it zones in on POND? POND teaches using a label of a file slash asset for encryption, such a label being prefixed to asset slash file, citing POND as well as the examiner's answer, and then thus POND teaches and suggests using a label, such as a descriptive tag as opposed to an empty tag in WAVE research, to indicate the appropriate encryption scheme for the assets in WAVE research and to secure sensitive data, see answer 24-26. I guess what I'm wondering is why isn't this a clear finding by the board, adopting a finding by the examiner, that POND is teaching this claim limitation, obviously would need to be adjusted for an XML tag, but nevertheless that POND is the focus of the claim limitation? That would be a new ground for rejection. That's not what the examiner applied, and that's not what the board applied. The board says expressly, we are continuing to rely upon WAVE to teach the encryption. What is lacking in WAVE is this tag-based encryption scheme. So we're going to use POND to grab the tag base to apply to the encryption scheme that's in WAVE. But POND, do you dispute that POND teaches some kind of tag description encryption scheme? It's not tag-based, but it does teach an encryption scheme. It's a label-based encryption scheme. Do you see a difference between what is a label, as contemplated by POND, and what is a tag? There is a difference between a generic label and a specific XML tag. So an XML tag is used to define specific objects within an XML document. Okay, so there's a difference between an XML tag and a generic label. A generic label, but is a label, I guess, a generic term that could include an XML tag? I don't think so, not the way that's used in POND. So POND is saying, we're going to take a label, we're going to put it over the— and then use it to encrypt and decrypt that file. To encrypt the file, but not to use a tag-based approach. So what POND would do is just encrypt the entire file, but not apply a tag to an object within that file, to encrypt at the object level. So what POND is doing is just doing sort of blanket encryption of files. This is totally separate from XML, because POND doesn't mention XML. XML is a specific format that uses tags at the object level. So you could have a big file, and I could have a thousand objects in it, and I could say, you'll have access to three of the objects, and I'm going to put that in the tag, and I'm going to specifically put the access control limitation in that, and then I'm going to use that tag to set the encryption level for that object. And then I could give you permission to three different objects, and I could give you permission to five objects, or I could give you permission to all the objects, using the information in the tags. POND doesn't do that. POND is a one-size-fits-all approach, pre-XML, that would just say, I give you all or nothing access to this file. Even though the encryption of the label and the encryption of the file in POND are described as separate things. That's right. So the label could give you access to the entire file, but that's it. It doesn't work in XML. I'm reading the last line of the abstract. The label is permanently prefixed to the protected file, but is encrypted and decrypted separately from encryption and decryption of the file. That's right. Okay. Yeah. So you can encrypt or decrypt the file, but this really, we're talking about the object itself that we're trying to protect, not really the label with respect to the 433 file. So we know that the examiner here, and the board, is continuing to rely upon WAVE to teach that encrypting stuff. They've made that expressly clear, and nobody is defending the claim construction for encryption. We know that hashing cannot be encryption. It's one way. It's not reversible. And so as long as that is continuing to be used as the basis for the rejection, if the examiner had said from the beginning, we're doing WAVE for the tags, and we're doing POND for the encryption, that would have been a different argument. You would have had different arguments and results, maybe at the examiner level and the board level. That argument was never presented. And so that wasn't the basis for the rejection, and that's not what the PTO is trying to support here. They're trying to change the rejection now and say, forget about WAVE. We didn't mean that that's teaching the encryption step. We're just going to go with POND. That's not how it worked out. Well, what if hypothetically we saw what the examiner was doing was giving alternate theories, where one of the theories did not rely necessarily on the primary reference teaching encryption with a hash function, and then really relying on POND for the teaching about encrypting and decrypting based on the content of a label, and that was sufficient. What would your argument be in response to that? I don't think the language would support that, because they make clear the examiner continues to rely on WAVE's research to teach the encrypting. Right, that's one thing that the examiner relied on, but maybe the examiner also relied on other things as well in addition to that, and the other things that it relied on does create a pathway that's independent of needing WAVE research to actually disclose that its hash function is encryption. If the court were to find that that's the path that the examiner and the board laid out, I don't think it's very clear from the record. Then I think that it should be remanded for further argument so that TechSec can address that argument clearly, because that is not the argument that they thought they were addressing, it's not the argument they addressed in their briefs, and it's not the argument that the board said that it was a form of encryption. POND is in suit, so is it fair to ask whether POND teaches encryption? POND teaches a form of encryption, yes. So how do we know it's the new ground? Your main argument seems to be the procedural technical one, that it was a new ground for rejection. If POND is in play to provide the prior art for encryption and you find tagging in WAVE, et cetera, then it would be a motivation to combine them together. That's correct. That's a different argument than a new ground for rejection. So how do we know? You clearly, in your gray brief, came back and said, you can't do this to me on POND, and presumably the patent office is going to have an answer, but why is it necessarily a new ground for rejection? For the reasons I think that I just read coming straight out of the board's decision, which is we are continuing to rely on WAVE Research to teach the encrypting stuff. They're telling you, this is how we're getting to obviousness. We're using WAVE for tagging. We're using WAVE for encrypting. We're using POND to fill in the missing. There isn't a harmless error doctrine anywhere here? There's not a harmless error doctrine. The statute states that the patentee is entitled to the patent unless the examiner and the board can show that this is an obvious combination, so it's not harmless. They're entitled to the patent. When they had a valid issued patent, they're entitled to maintain that, and unless the patent office can meet the standard of showing that it was an obviousness combination here that is not only based on a proper claim construction, that it was clearly conveyed to the applicant and that all the arguments were raised. I guess your position sounds like the examiner's answer did not include this very new theory that the board ultimately relied on. That's right. So can you point me to the page of the examiner's answer that you're saying, or the pages that represent the examiner's full explication of this conception of rejection, and then I can see for myself how the examiner didn't rely on this theory that you're saying that the board ultimately used. I don't have that site handy. I can try to get it when I come back up. I'm focused on the appeal from the board's decision, which is their basis for affirming. So we're appealing from the board's decision. Right. And you're concluding that the board issued a new grounds of rejection, right? The board's theory. I believe the board stated the same grounds for rejection, which is they're affirming based on the fact that the examiner is continuing to rely on wave research to teach encrypting. I think the patent office is now trying to recast that as a new ground for rejection, but that's not one that the board or the examiner set forth. You have your finger on the board's decision right at the point where they say we're relying on 22. It's on 22, yes. So the board says that whole question is moot, right? So it's not relying on the question of whether wave research teaches encryption. I think it's confusing. It says it's moot because we're not solely relying on it. But they're still relying on it. It's not clear what they're relying on it for. They're saying we're not solely relying on wave research anymore. We are into your rebuttal time. You can use it now or later. Good morning. May it please the court. I'd like to start with the examiner's rejection based on wave and POND. In the examiner's answer, this starts at APPX 2293 and then goes on to 95. The examiner is, this is the obviousness rejection based on wave and POND. And on 2294 at the last paragraph is talking about how wave research, while it sufficiently discloses the story and the encrypted object, it doesn't, wave research itself does not disclose the encryption as claimed. So encryption determined at least in part by the object tag. And that goes on to 2295. And then the examiner specifically says that from a continuation application, the previous examiner relied on POND as sufficiently teaching and rendering obvious the encrypting and storing steps. And then the examiner goes on to cite what that previous examiner cited about POND teaching encryption and using a label that determines the encryption step. The final statement of the- Where does the examiner align himself with this previous examiner on this point? That's correct. Where does he say, that's me, I buy the same argument. So the, why don't we go to APPX 2297. It's the, sort of the conclusion, what the examiner is concluding is the obviousness rejection. And it's the last paragraph before you get to the bolding of claim two. And that, in that last sentence is that it would have been obvious at the time of the invention. Where are you on 2297? It's 2297. It's the last paragraph before the bolding when they get into claim two. Because of the confidential nature? Yes. So that sentence, the examiner says it would have been obvious to one of ordinary skill in the art at the time of the invention was made to modify the file tagged objects of wave research to utilize and include encryption as taught by POND. And I think to be clear, the examiner's answer was withdrawing a 102 rejection. So the appeal brief to the board had arguments about 102 and wave research, teaching all the limitations of the claim. And the examiner in the answer withdrew the 102 rejection. But the board still had those arguments in front of them. And I think addressed all of the arguments that TechSec made, including whether wave research taught encryption. But I think it's clear from the examiner's rejection. And there's also parts in the examiner's answer where the examiner is responding to TechSec's argument. So one of TechSec's- This is not the examiner's brief in this case, right? This is the examiner's answer in this re-exam, yes. So from your point of view, this particular document puts the appellant on sufficient notice that he's being told that POND is being served up to teach encryption. That's correct. TechSec's- In the joint appendix, there's also TechSec's argument to the board, the appellant's position on the wave research and POND rejection. Where is that in the record? It's at APPX 1796 going on to 1798. What's the thrust of that? Shall I say again? What's the thrust of your point there? The point is that TechSec's argument to the board was that one of the reasons you wouldn't combine wave research and POND is that POND's encryption scheme was too complex. And they're not pursuing that argument here. But I think that highlights that TechSec, in their appeal brief to the board, understood that POND was being used for the encryption, not just having a tag that determined the encryption step. And so their argument at 1797, the last sentence, it talks about the digital assets themselves are left unmodified, and as they are, system resources such as documents stored and updated by members of an enterprise would not be more suited to be encrypted according to the complex POND process. So TechSec expressly argued to the board that you wouldn't combine POND's encryption scheme with wave research. And the board addresses that in— What you're saying is that in the response to the board from the examiner's point of view, that your adversary wasn't trying to argue that POND did not teach encryption. Right. It had an opportunity, if it wanted to, to make that argument at that point in time. Right. The accommodation arguments are ripe. I mean, we can argue about those here today. Right. His particular—so what's your specific response to his claim that this, by the board having hung on to wave, which it seems to have done at least in part to teach encryption, why wouldn't that be viewed as a new ground? Because the board specifically says some of these— And though the board does say the examiner continues to rely on encryption, there's nothing wrong with the board relying on two references to teach the encryption scheme. The examiner and the board expressly acknowledged that TechSec was correct, that wave research did not satisfy a 102 rejection because it did not teach encryption based on the object tag determining the encryption scheme. And that's why the examiner in the rejection and the board then relied on POND for teaching that label that encrypts—that determines the encryption scheme. And that was the 103 rejection. And I think it's hard to believe that TechSec did not have knowledge that that was the examiner's position  In turning—unless there's any further questions on that, I just sort of like to back up and talk about the breadth of these claims. I mean, TechSec's claims are directed to these broad steps of manipulating data. And Claim 1 has these known steps that they're just providing, selecting, encrypting, and then storing data or information. The claim then requires that the information be an XML formatted—an XML formatted data. But XML was, at the time, a known way to format data. And it labeled the data with these tags—XML tags—as to meaning. And the board found, based on both wave research and a separate rejection on Hertz, POND, and Fletcher, that using an encryption scheme, determining that by the tag, would have been obvious. So unless there's any other questions, we would ask this court to affirm on either or both of the board's obviousness decisions. Thank you. Thank you. So I thank my colleague for pointing me to the right pages here in the examiner's decision. 2294, it's clear here that the examiner is relying on wave research to teach the encrypting. So it says the final pair— It would, I think—tell me if I'm wrong—be clarifying if instead of your saying relying, you always focused on relying only. Relying only on wave research. Because I gather that's sort of the gist. Nobody disputes that there is some reliance on wave research for encrypting, but not reliance in the sense of with no substitute. That's true. My colleague just said, and it says right here in the last paragraph on 2294, wave research sufficiently discloses storing the encrypted object for subsequent use by the intended recipient. It doesn't teach the encrypting determined in part by the object tag. And I think my colleague just said the examiner and the board relied on PON to teach the label portion of the encrypting based on the object tag. Not the encrypting in general, but if we need to go to find a label, we can go look to PON. So because PON—I'm going to ask the question this way and then they'll tell me why it's a bad question. If PON teaches encrypting a label, does it not follow logically it teaches encrypting? It teaches encrypting not the way that's used in the patent, and it's not clear if the examiner or the board would say the encrypting in PON is the same as the encrypting in the 433 patent. If that's the argument, then that argument needs to be hashed out because that's not what they said. They don't want to use the word hash. That's good. But again, they relied on hashing. So different kind of— It's a different argument. It's a different rejection than what was presented below. And what's the nature of the particular kind of encrypting that you think the board found in Wave Research and really didn't and maybe even couldn't have found? They found in Wave Research MD5 hashing algorithm, which is what you would do if you take a giant file. You can compress it—and if I'm overgeneralizing or speaking— you can get a 27-string character, and that will be representative of the contents of that file. You could then do that to another file and also get a 27-string character. 27-character string. You can compare those two and see if you have identical files. You can never take that 27-character string and get back to the original document. It's just a hash number that you use for integrity. It has nothing to do with encryption. It's not reversible. So it's a completely different function. It has nothing to do with security. And this pattern is XML—